IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD W. LEMOINE, | : | No. 4:08-CV-1968 |
| Plaintiff, | : | |
| v. | : | |
| INTERNATIONAL BEDDING d/b/a IBC GROUP, INC. | : | Hon. John E. Jones III |
| Defendant. | : | |

# MEMORANDUM

## July 8, 2010

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Currently pending before the Court is a Motion for Summary Judgment (the "Motion") filed by Defendant International Bedding d/b/a IBC Group, Inc. ("Defendant" or "IBC"). (Doc. 25). For the reasons that follow, we will grant the Motion.

**PROCEDURAL HISTORY:**

Plaintiff Ronald W. Lemoine ("Plaintiff" or "Lemoine") initiated that above-captioned action by filing a complaint in the Schuylkill County Court of Common Pleas on September 22, 2008. (Doc. 1-2). Therein, Plaintiff asserted against Defendant violations of the Americans with Disabilities Act (the "ADA"), 42

1

U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. C.S. § 951 *et seq.* Defendant removed the matter to this Court pursuant to 28 U.S.C. § 1441 on October 29, 2009. (*See* Doc. 1). On February 2, 2010, IBC proceeded to file the instant Motion and a brief in support thereof. (Doc. 25). On February 19, 2010, Plaintiff filed documents in opposition to the Motion. (Docs. 26, 27). Defendant's reply brief was lodged on March 4, 2010. (Doc. 34). Accordingly, the Motion has been fully briefed and is therefore ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

**STATEMENT OF MATERIAL FACTS:**[1]

Plaintiff was hired by IBC in July of 1997 as an Operations Manager. (Compl. ¶¶ 1, 5). He was promoted to the position of Regional Vice President of Operations in 2006, overseeing the daily operations of IBC's plants in Barnesville and Frackville, Pennsylvania. (*Id.* ¶¶ 6, 7). During 2003, Plaintiff allegedly began experiencing pain and discomfort in both of his knees, which led to two hospitalizations. (*Id.* ¶ 11). According to Plaintiff, he was eventually diagnosed with degenerative conditions in both knees, along with osteoarthritis in his left knee. (*Id.* ¶ 12). Plaintiff avers that in 2005 he began using a walker and eventually used a cane to assist him in walking. (*Id.* ¶ 13). Defendant purchased a golf cart for Plaintiff to allow him to more easily travel through the Barnesville plant. (*Id.*).

Lemoine underwent two separate operations in the Fall of 2006 in an attempt to alleviate the pain in his knees. (*Id.* ¶ 14). Plaintiff alleges that his disability never affected his work performance and that he never received a formal complaint

---

[1] In accordance with the above-referenced standard, we construe the facts in the light most favorable to Plaintiff, as the non-moving party. Since, as explained in further detail below, we will strike Plaintiff's statement of facts for failure to comply with Middle District of Pennsylvania Local Rule 56.1, the following recitation is taken from Plaintiff's complaint.

4

about his productivity. (*Id.*¶¶ 15, 16). Plaintiff further avers that on November 28, 2006, he was informed by IBS' Corporate Vice President of Operations, Lance Ellman ("Ellman"), and Chief Financial Officer, Kevin Sirup, Esq. ("Sirup"), via telephone that he was being terminated from his employment. (*Id.*¶ 17). During that conversation, Plaintiff was allegedly informed that IBC knew he was "having problems with his legs" and that "it wasn't working out anymore." (*Id.*). At the time of his termination, Plaintiff was purportedly promised a severance package worth four month's salary and a $20,000 bonus, neither of which he ever received. (*Id.*¶ 18). As a result of these allegations, Plaintiff contends that he was the subject of disability discrimination and harassment. He requests, *inter alia*, awards of back pay, front pay, overtime, lost fringe benefits, as well as compensatory and punitive damages in connection with the alleged violations of his federal and state rights. (*Id.* Counts I-II).

**DISCUSSION:**

At the outset, we note that Middle District of Pennsylvania Local Rule 56.1 requires:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs

set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

M.D. Pa. L.R. 56.1 ("Rule 56.1"). In the case at bar, Plaintiff has failed to submit a concise statement of facts responding to the numbered paragraphs in Defendant's factual statement. Indeed, Defendant's statement of facts contains 54 paragraphs, but Plaintiff's statement of facts contains only 22 paragraphs, none of which identify the paragraphs in Defendant's statement of facts to which they respond. (*Compare* Doc. 25-3 *with* Doc. 27). Numerous courts in this district have held that when a plaintiff files a factual statement that does not correspond to the defendant's statement of facts, the court is well within its discretion to strike the plaintiff's submission. *See, e.g.*, *Hartshorn v. Throop Borough*, 2009 WL 761270 *1 (M.D. Pa. 2009) (Caputo, J.); *Jamison v. Campbell Chain Cooper Tools*, 2008 WL 5412831 *1 (M.D. Pa. 2008) (Conner, J.); *Doe v. Winter*, 2007 1074206 *1 n. 2 (M.D. Pa. 2007) (Kane, J.). Accordingly, we shall do the same.[2] Further, as

---

[2] This decision is informed by our recognition that Rule 56.1 serves several purposes. "First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e) on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designate specific facts showing that there is a genuine issue for trial.*'" *Doe v. Winter*, *1 n 2. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted) (emphasis added)). In the case at bar, Plaintiff's failure to file a responsive statement of facts in no way aids, and in fact impairs, our identification of the material facts that are in dispute. Therefore, Plaintiff fails to carry his burden of designating triable factual disputes. Striking Plaintiff's nonresponsive statement of facts is proper under the circumstances.

authorized by Rule 56.1, we shall admit as uncontroverted the statement of facts submitted by Defendant. *See* Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."). With this said, we shall proceed to conduct a merits analysis of Plaintiff's claims.

Initially, we note that the analysis of a PHRA claim is identical to that of an ADA claim. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). Accordingly, we shall employ the same analytical framework to resolve both of Plaintiff's claims.

It does not appear that Plaintiff has adduced direct evidence of discrimination against him. Accordingly, the Third Circuit has instructed that the framework adopted in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), should be employed in analyzing indirect discrimination cases such as the one at bar. *Heilman v. Allegheny Energy Serv. Corp.*, 351 Fed. Appx. 645, 647 (3d Cir. 2009) (citations omitted) (addressing a discrimination claim under the Age Discrimination in Employment Act–the "ADEA"– and stating that the analytical framework for discrimination cases lodged under the ADA, ADEA, and Title VII are identical); *see also Dawley v. Erie Indem. Co.*, 100 Fed. Appx. 877, 880 (3d

Cir. 2004) (applying the *McDonnell Douglas* framework to ADA claims involving indirect evidence of discrimination).

The *McDonnell Douglas* approach imposes a three-step burden-shifting framework. "In the first step, the plaintiff must make out a *prima facie* case.[3] If he does, a presumption of discrimination or retaliation arises and the burden shifts to the defendant to produce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory [or nonretaliatory] reason for the unfavorable employment decision."[4] *Dawley*, 100 Fed. Appx. at 880 (citations and quotations omitted). "If the defendant carries this burden, the presumption drops out and the plaintiff must submit evidence from which a fact finder could reasonably either (i) disbelieve the employer's articulated legitimate reasons;[5] or

---

[3] To establish a *prima facie* case of disability discrimination, Plaintiff must prove that he: (i) has a "disability;" (ii) is a "qualified individual;" and (iii) has experienced an "adverse employment action" because of his disability. *See Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006).

[4] Defendant satisfies its burden under this prong so long as it articulates any nondiscriminatory reason for the adverse employment action. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a *discriminatory* reason.") (emphasis added).

[5] In interpreting this language, the Third Circuit Court of Appeals has said, "[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer . . . . Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994); *see also Castellani v. Bucks County*, 351 Fed. Appx. 774, 777

(ii) believe that an invidious discriminatory [or retaliatory] reason was more likely than not a motivating or determinative cause of the employer's action."[6] *Id.* (citations and quotations omitted).

For the purposes of resolving the instant Motion, we shall assume, *arguendo*, that Plaintiff can establish a *prima facie* case of disability discrimination. Accordingly, the burden shifts to Defendant to adduce evidence indicating that there was a legitimate, non-discriminatory reason for the termination of Plaintiff's employment. In this regard, Defendant has adduced the following evidence indicating that Plaintiff's employment termination was based upon performance issues and not on discriminatory animus: (i) Ellman testified that the relevant performance indicators at the Barnesville and Frackville facilities began to decrease in 2005 and that this issue was raised with Plaintiff on many occasions but had not been rectified. Lance Ellman Trans., November 6, 2009 24:14-25:5;[7] and (ii) IBC also suspected Plaintiff of self-dealing with temporary

---

(3d Cir. 2009).

[6] Pursuant to this language, a plaintiff "must point to evidence that proves . . . discrimination in the same way that critical facts are generally proved – based solely on the natural probative force of the evidence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997).

[7] As an example, Ellman testified that Plaintiff struggled with inventory issues. In this regard, Ellman claimed that at one point in time Plaintiff had 60-70 tractor-trailer truckloads of excess inventory which became unusable and had to be discarded, resulting in a large monetary loss for IBC. Ellman Trans. 31:19-32:1. By way of further example, Ellman testified that

staffing agencies and accepting kickbacks from vending machine companies. *Id.* 57:23-61:19; 66:16-20; 68:12-69:3; 81:7-82:19.[8] Accordingly, Plaintiff was informed that his termination was based on the fact that his facilities were "having issues everywhere; inventory, quality . . . labor." *Id.* 64:18-20. We believe that this is evidence is more than sufficient to establish Defendant's legitimate, non-discriminatory reason for Plaintiff's employment termination. *See Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 (3d Cir. 1988) (citing plaintiff's performance deficiencies as a legitimate, non-discriminatory reason for an adverse employment action). Consequently, the burden of production shifts to Plaintiff and requires him to produce evidence indicating that the aforementioned legitimate, non-discriminatory reason for his employment termination was a pretext for disability discrimination.

It is at this juncture that Plaintiff's failure to comply with Rule 56.1 deals a fatal blow to his claims. As we have already discussed, Plaintiff's noncompliance with that rule has led us to strike his undisputed statement of facts from the record. Unfortunately for Plaintiff, that same was the sole document containing citations to

---

Plaintiff's facilities experienced quality issues that affected many of IBC's major accounts. *Id.* 72:10-73:24 (for the proposition that some of the beds assembled at Plaintiff's facilities contained the wrong spring units).

[8] These suspicions were later confirmed through an independent investigation conducted after Plaintiff's termination. (*See* Doc. 25-5, bate stamp nos. 760-803).

the record in support of his contention that Defendant's legitimate, non-discriminatory reason for his employment termination was pretextual. Indeed, Plaintiff's brief in opposition does not contain any such citations, but rather incorporates by reference the paragraphs of the now-stricken statement of facts. Further, we cannot locate in any of the documents submitted by counsel a citation to the record that supports Plaintiff's contention regarding pretext.[9] Consequently, it is our determination that Plaintiff has failed "to go beyond the pleadings and . . . *designate* specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)." It is not our responsibility to identify such facts, *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (citations omitted), and so we decline any invitation to do so. Accordingly, we shall grant the instant Motion because

---

[9] We note that Defendant's statement of facts contains an excerpt from Plaintiff's deposition testimony. According to Plaintiff, during the conversation in which Ellman terminated him, Ellman allegedly made reference to his knees, saying, "[I]t's not working out no more, things aren't getting done, I know you're having problems with your knees." Lemoine Trans. August 7, 2009 110:19-22. This reference, in and of itself, is not enough to cast doubt upon Defendant's contention that Plaintiff was terminated for performance related deficiencies. Indeed, even if this statement were true, it could only be interpreted as insinuating that Plaintiff's knee problems were the cause of the performance-related issues that led to his termination. Such a circumstance is insufficient in supporting a discrimination claim. *See Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1219 n.3 (8th Cir. 1999), *cert denied*, 528 U.S. 821 (1999) (firing an employee because of the job-performance consequences of a disability, rather than the disability itself, is not actionable under the ADA); *see also Westfall v. Vanguard Group, Inc.*, 2007 WL 1683849 *3 (E.D. Pa. 2007).

Plaintiff has failed to direct us towards any evidence that could lead a reasonable person to conclude that Defendant's legitimate, non-discriminatory reason for terminating his employment was a pretext for disability discrimination.[10]  An appropriate Order shall enter.

---

[10] In fact, we believe that Plaintiff's acknowledgment that IBC purchased a buggy for him so that he could more quickly travel the premises of the Barnesville plant belies his assertion that his knee problems were the source of the alleged discriminatory animus that he experienced.